935 F.2d 270
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rodolphe HUART, Plaintiff-Appellant,
v.
FIFTH THIRD BANK OF TOLEDO, N.A., etc., et al., Defendants-Appellees.
 No. 90-4040.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1991.
 
 Before RALPH B. GUY, JR. and RYAN, Circuit Judges, and JOINER, Senior District Judge.*
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Plaintiff, Rodolphe Huart, appeals from a summary judgment granted in favor of the defendant, Fifth Third Bank (Bank). Huart was a long-time employee of the Bank and retired in 1984. At the time of his retirement, he was eligible for and received pension benefits. The Bank also had a medical insurance plan in which employees and retirees were eligible to participate. Over the years the medical plan has been at times fully paid for by the Bank and at other times, partially financed by required employee contributions.
 
 
 2
 When Huart was approaching retirement, he began securing information from the personnel office as to what his benefits would be. As part of the information he received, he was told that he was eligible to continue under the Bank's medical plan but that, just as was the case with the active employees, a 10 percent contribution was required. Just before Huart's actual retirement, however, the Bank began to absorb the entire cost of the medical coverage for both active employees and retirees. This continued until 1989 when Huart was informed that due to spiralling costs, the medical plan would again become contributory and that for retirees the contributory portion would be deducted from their pension checks.
 
 
 3
 On April 1, 1990, four months after he was informed of this proposed change, the Bank began deducting the retirees' contributions from their monthly pension checks. Huart protested and ultimately filed this lawsuit.[1] The parties filed cross-motions for summary judgment, and the district court concluded that judgment should be entered in favor of the defendant. With one exception, which we address later, we agree.
 
 
 4
 Huart argues on appeal, as he did in the district court, that the Bank's action "divested" him of vested pension benefits and constitutes a "forfeiture" of the type prohibited by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. In making this argument, Huart concedes, as he must, that welfare plan benefits such as medical insurance coverage are not subject to the "vesting" protections of ERISA. Huart would nullify this concession, however, by making two arguments: (1) that prior to April 1, 1990, he was receiving $1,808.32 per month in pension benefits, and now he is receiving a lesser net sum in his monthly check, so, ipso facto, there has been a prohibited divestiture or forfeiture of pension benefits; and (2) that even if ERISA does not prohibit what the Bank did here, the Bank was either contractually obligated to continue "no-cost" medical coverage or estopped from making him now contribute in order to keep his medical coverage when he did not have to contribute at the time of his retirement.
 
 
 5
 We first address Huart's arguments based on a contract theory. There is no doubt that the health plan documents and plan summary give the Bank the right to unilaterally make changes in the health care coverage and the method of payment for the coverage. Huart's concedes this, but argues that other documents amount to an amendment to the plan, or, at least, should estop the Bank from now requiring him to make contributions to the cost of his health coverage. Huart received the documents on which he now relies in September 1984, shortly before he retired. These documents essentially are the "work papers" and employer form letters which indicate the pension option a prospective retiree has selected and detail how benefits are computed. One of these documents is the employer's authorization to the pension trustee to begin pension payments to Huart on October 1, 1984. This document reads, in pertinent part:
 
 
 6
 Said payments to continue until further notice from the Retirement Committee.
 
 
 7
 Amount per month $1,808.32
 
 
 8
 First check to be issued October 1, 1984
 
 Deductions from monthly
 
 9
 check for medical plan
 
 
 10
 coverage None
 
 
 11
 (App. at 13).
 
 
 12
 The above represents instructions to the trustee, and nothing more. The statement that there are to be no deductions for medical plan coverage is nothing more than a reflection of the current state of the health plan as far as contributions are concerned. Significantly, it is not even a document addressed to Huart, and in no way could be construed as a contract amendment or serve as the basis for an estoppel claim.
 
 
 13
 Presenting a better talking point for Huart, is a companion document which stated in relevant part:
 
 
 14
 BENEFITS WHICH WOULD CONTINUE AFTER YOUR RETIREMENT:
 
 
 15
 1. Free checking account.
 
 
 16
 2. Employee rates on loans.
 
 
 17
 3. Family medical insurance coverage at no cost to you.
 
 BENEFITS WHICH WILL CEASE WHEN YOU RETIRE:
 
 18
 1. Life insurance coverage would lapse [you may convert up to your entire amount to a whole life policy]. Minimum amount which can be converted would be $2,000. This must be done within 31 days after your retirement date; if you should die within that 31 day period, you would still have the coverage. There is also a $12.00 application and service fee charge per year to convert.
 
 
 19
 2. Your long term disability insurance would cease on age 69 1/2.
 
 
 20
 3. Your family dental coverage will lapse on September 30, 1984.
 
 
 21
 (App. at 19.)
 
 
 22
 This we interpret as no more than a statement as to the status of Huart's benefits as of the date of his retirement. The representation that "family medical insurance coverage will continue at no cost to you" was correct at the time it was made. We cannot construe it, however, as an amendment to the Medical Plan in which the right to unilaterally make changes in the Plan or the method of payment for coverage is so explicitly set forth.
 
 
 23
 When employees of the Bank are on the eve of retirement, they all receive the same "retirement package." It sets out the arithmetic computations of the pension payments the employees will receive under whatever option they have chosen, and brings them up to date on any other benefits they can expect to receive as of the date of retirement. When all of these documents are read together, it is impossible to interpret them as some type of new contract or promise existing between the Bank and the prospective retirees. That clearly was not their purpose.
 
 
 24
 This leaves only the technical question as to whether it is an ERISA violation to deduct the medical coverage contribution from Huart's monthly pension check without his permission. Clearly with his permission such a deduction does not offend ERISA.
 
 
 25
 It would be my opinion that Huart's voluntary decision to retain coverage is the functional equivalent of authorizing the deduction from his pension check to pay for it. After all, he did have four months' advance notice of the change and said nothing about terminating coverage. However, my colleagues on the panel feel that without Huart's express permission, this deduction from his pension check is impermissible under ERISA. This view thus becomes the court's decision on this issue. We again join hands, however, in concluding that what has gone on before is a wash and we will not require that the Bank send Huart a refund check only to then require Huart to endorse the check back to the Bank. Huart must continue to pay for the coverage if he wants to maintain it.
 
 
 26
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 No other retirees protested